

U.S. Department of Justice

**Nathaniel R. Mendell**
*Acting United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

March 9, 2021

Derege B. Demissie
Demissie & Church
929 Massachusetts Ave., Suite 101
Cambridge, MA 02139

    Re:    United States v. Ishtiaq Ali Saaem
            Criminal No.

Dear Mr. Demissie:

      The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Ishtiaq Ali Saaem ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    Change of Plea

      No later than April 1, 2021, Defendant will waive Indictment and plead guilty to an Information charging him with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). Defendant admits that he committed the crime specified in the Information and is in fact guilty as charged in the Information. Defendant agrees to the accuracy of the attached statement of facts. The U.S. Attorney agrees not to charge Defendant pursuant to 18 U.S.C. §§ 175, 1343, and 1028A(a) based on the conduct underlying the crime charged in this case that is known to the U.S. Attorney at this time.

    2.    Penalties

      Defendant faces the following maximum penalties: incarceration for 20 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

      Defendant understands that, if he is not a United States citizen who was born in the United States, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead

1

guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.   Sentencing Guidelines

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 13:

   a) Defendant's base offense level is 16, because the charged crime involved obstructing the investigation or prosecution of a criminal offense (USSG § 2J1.2(c)(1)), and therefore the offense level is determined by subtracting 6 from the offense level of the underlying offense (USSG § 2X3.1), 18 U.S.C. § 175(b), which has a base offense level of 20 (USSG § 2M6.1(a)(4), which is increased by 2 because the offense involved a select biological agent (ricin) (USSG § 2M6.1(b)(1);

   b) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw his guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in his sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (himself or through counsel) indicates that he does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which he is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.   Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence to the Court:

   a) incarceration within the Guidelines sentencing range as calculated by the parties Paragraph 3;

   b) a fine within the Guidelines sentencing range as calculated by the parties in Paragraph 3, unless the Court finds that Defendant is not able, and is not likely

to become able, to pay a fine;

c) 36 months of supervised release;

d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

e) restitution as ordered by the Court; and

f) forfeiture as set forth in Paragraph 6.

5. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge his conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that his conviction or sentence should be overturned.

Defendant understands that he has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a) He will not challenge his <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) He will not challenge his <u>sentence</u>, including any court orders related to forfeiture, restitution, fines, or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

The U.S. Attorney agrees that, regardless of how the Court calculates Defendant's sentence, the U.S. Attorney will not appeal any sentence of imprisonment of 12 months or more.

Defendant understands that, by agreeing to the above, he is agreeing that his conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge his conviction and sentence, regardless of whether he later changes his mind or finds new information that would have led him not to agree to give up these rights in the first place.</u>

Defendant acknowledges that he is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that his lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member

3

of law enforcement involved in the case engaged in intentional misconduct serious enough to entitle Defendant to have his conviction or sentence overturned.

6. Forfeiture

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7. Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to his criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8. Breach of Plea Agreement

Defendant understands that if he breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw his guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from his commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials he provided to the government during investigation or prosecution of his case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if he breaches any provision of this Agreement or engages in any of the aforementioned conduct, he thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*   \*   \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Kriss Basil.

Sincerely,

NATHANIEL R. MENDELL
Acting United States Attorney

By: _____
Stephen E. Frank
Chief, Securities, Financial & Cyber Fraud Unit
Jordi de Llano
Seth B. Kosto
Deputy Chiefs, Securities, Financial & Cyber Fraud Unit

_____
Kriss Basil
Assistant U.S. Attorney

*Digitally signed by KRISS BASIL Date: 2021.03.09 16:03:34 -05'00'*

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me and we have had enough time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

*Ishtiaq Ali Saaem*
Ishtiaq Ali Saaem
Defendant

Date: 3/12/2021

I certify that Ishtiaq Ali Saaem has read this Agreement and that we have discussed what it means. I believe Ishtiaq Ali Saaem understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

/s/ Derege Demissie

Derege B. Demissie
Attorney for Ishtiaq Ali Saaem

Date: 03/12/21

## STATEMENT OF FACTS

### *Background*

1. ISHTIAQ ALI SAAEM ("SAAEM") was a Bangladeshi citizen who was a resident in Massachusetts. SAAEM, who held a Ph.D. in biomedical engineering, worked as the director of advanced research at a biotechnology firm ("the Company").

2. Ricin was a deadly poison that could be extracted from the seeds (beans) of the castor oil plant.

3. Convallatoxin was a deadly poison that could be extracted from the lily of the valley plant.

### *Efforts to Possess Biological Agents or Toxins*

4. In 2015, SAAEM became interested in acquiring ricin from castor beans or convallatoxin from lily of the valley, inspired by "Breaking Bad," a popular television program in which a character poisons multiple persons with these toxins.

5. On about June 24, 2015, SAAEM ordered 6 lily of the valley plants online as well as 100 packets of castor beans, each containing 8 seeds, for $321 online.

### *False Statements in 2015*

6. On or about July 2, 2015, in SAAEM's office at the Company, special agents from the Federal Bureau of Investigation ("FBI") interviewed SAAEM about his purchase of castor beans. SAAEM falsely told law enforcement agents that he purchased castor beans for planting at his apartment in Cambridge, Massachusetts, solely for decoration and did not state that he was interested in obtaining deadly poisons. But that same day, and continuing through the summer 2015, SAAEM researched other sources of deadly poison.

1

7. On or about July 2, 2015, after he spoke to the law enforcement agents, SAAEM visited a webpage about extracting cyanide, another deadly poison, from apple seeds.

8. SAAEM later visited webpages containing articles entitled, "What is the most lethal poison?" and "The five deadly poisons that can be cooked up in a kitchen," and SAAEM conducted internet searches for "tasteless poison household item," rat poison, and extracting poison from tomato plants.

*Embezzlement from the Company*

9. From at least as early as November 2015 to and in or about October 2016, SAAEM embezzled $275,000 from the Company by submitting false and fraudulent invoices and purchase orders to the Company in order to seek any that sought reimbursement for laboratory materials and equipment that he had never purchased.

10. To embezzle the funds, SAAEM created invoices and purchase orders from real companies for products that he did not order for the Company.

11. SAAEM submitted the invoices and purchase orders using the Company's reimbursement system, causing the Company to pay SAEEM by direct deposit into his personal bank account.

12. In October 2016, the Company discovered SAAEM's fraud, and SAAEM paid back the stolen funds to avoid criminal prosecution.

*False Statements to the FBI in 2019*

13. On or about July 29, 2019, SAAEM spoke with FBI agents in Pennsylvania. SAAEM falsely denied embezzling funds from the Company and made false statements to the FBI agents about the Company's payroll systems and operations. SAAEM also falsely told the

FBI agents that, in 2015, he only purchased the castor beans because he liked the color of the castor oil plant's leaves.

14. On or about August 22, 2019, an FBI agent contacted SAAEM about a subpoena to appear before a federal grand jury in Boston.

*Obstruction of the Grand Jury in 2020*

15. On or about January 31, 2020, in Boston, SAAEM and his attorney met with law enforcement personnel in lieu of a grand jury appearance. SAAEM admitted that, in 2019, he lied to the FBI about embezzlement from the Company to try to avoid prosecution.

16. At the meeting on January 31, 2020, SAAEM repeated and made new false statements to law enforcement about his acquisition of castor beans in 2015. Specifically, SAAEM falsely stated that his purpose in buying castor beans related to an interest in gardening. At the time he made these statements, SAAEM knew that his purposes in buying castor beans and lily of the valley included the acquisition of the sources of ricin and convallatoxin. SAEEM also made false and misleading statements about his knowledge of ricin, when he researched ricin, whether he knew that castor beans contained ricin, why he purchased the castor beans, and whether he sought other sources of poison.

I, ISHTIAQ ALI SAAEM, agree under penalty of perjury that the foregoing Statement of Facts is true and correct.

Signed this 12 day of March, 2021

*[signature]*
ISHTIAQ ALI SAAEM

3