UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ISHTIAQ ALI SAAEM<br><br>　　　Defendant | No. 21-cr-10084-RGS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this memorandum in connection with the sentencing of defendant Ishtiaq Ali Saaem. For the reasons stated below, the Court should sentence Saaem to 12 months of incarceration, 3 years of supervised release, a fine within the guidelines, and a special assessment of $100.

**I.　　THE OFFENSE CONDUCT**

　　A.　　Background

Ricin in an extract of castor beans and is considered an extraordinarily dangerous poison.[1] The extraction of ricin from castor beans is relatively easy and does not require technical expertise. Procedures and methods for this extraction are available on the internet. Ricin is a listed select biological agent/toxin under 42 U.S.C. § 262(a) and 42 C.F.R. § 73.[2] Based on anecdotal evidence, a lethal dose of ricin through human ingestion of castor beans may be as few as two beans; animal studies show lethal toxicity at 21 to 42 *micro*grams of ricin per kilogram of body weight.[3] In

---

[1] *See* Audi, *et al*. (2005), "Ricin Poisoning: A Comprehensive Review," *JAMA,* Vol. 294, No. 18 (2005).
[2] *See* Select Agents and Toxins List | Federal Select Agent Program.
[3] Audi (2005).

simple terms, doing the math, that means a lethal dose of ricin for a 200-pound animal would be about .0038 grams, less than a grain of sand or of rice.[4]

In June 2015, Saaem, a biomedical engineer who was the director of research at a biotechnology company in Massachusetts, ordered 6 lily of the valley plants and ordered 800 castor beans online.[5] Statement of Facts ("SoF") ¶¶ 1, 5 (ECF No. 9). His inspiration was the character, Walter White, from *Breaking Bad*, a television series in which a disaffected scientist commits a variety of crimes, including the development or use of at least two poisons: convallatoxin, which comes from lily of the valley plants, and ricin. *Id*. ¶ 4. In fact, in the course of the series, White develops ricin twice, both times with the intent to kill another person,[6] and in one episode involving ricin, White poisons a child with lily of the valley berries.[7]

In July 2015, agents from the Federal Bureau of Investigation ("FBI") interviewed Saaem about his purchase of castor beans, and he told them, falsely, that he simply wanted to plant the beans to grow the castor bean plants for ornamental purposes. *Id*. ¶ 6.

His real purpose, however, was to obtain deadly poisons, and in the summer of 2015, starting the same day that the FBI approached him, Saaem researched a variety of deadly poisons that can be manufactured or developed in the home. *Id*. ¶ 7-8.

Shortly thereafter, starting in the fall of 2015, Saaem began stealing money from his employer by submitting false invoices for laboratory equipment. *Id*. ¶ 9-11. Saaem's employer

---

[4] *See* The Measure of Things - 0.0038 grams.

[5] Saaem earned a doctorate from Duke University in 2011. His dissertation concerned the creation of a device to synthesize DNA. See Enabling Technologies for Synthetic Biology: Gene Synthesis and Error-Correction from a Microarray-Microfluidic Integrated Device (duke.edu).

[6] Ricin | Breaking Bad Wiki | Fandom

[7] Face Off | Breaking Bad Wiki | Fandom

2

eventually discovered the fraud in the fall of 2016, and Saaem paid back the money he stole ($275,396.50), the bulk of which he had not spent. *Id.* ¶ 12.

In July 2019, FBI agents approached Saaem concerning his theft of funds in 2015 and 2016. In the course of the interview, Saaem also told the agents that he had purchased the castor beans in 2015 because he like the color of the castor bean plant's leaves. *Id.* ¶ 13. Saaem told the agents that he no longer had the castor bean plant because it died. *See* Redacted 302, Aug. 23, 2019 (Exhibit 1).

In August 2019, an FBI agent contacted Saaem about a subpoena to appear before the federal grand jury in Boston, Massachusetts, for the purpose of further investigating the scope of the scheme to defraud his former employer.

B.   Obstruction of Justice

In January 2020, pursuant to a proffer agreement, Saaem and his attorneys met with a federal prosecutor and an FBI agent in Boston, Massachusetts, in lieu of an appearance before the grand jury, and during the proffer interview, Saaem made various false and misleading statements his 2015 purchase of castor beans. *Id.* ¶ 15-16. In substance, Saaem said he bought the castor bean plants to grow in his front yard because he liked their orange and green color, their oblong leaf shape, and their cold hardiness in Massachusetts. He further said that he did not know that castor beans were related to ricin when he ordered the beans and that he never planted the beans and simply threw them away. When asked to draw a picture of the leaf, he produced an oval leaf shape. *See* Redacted 302, April 7, 2020 (Exhibit 2), and Drawing (Exhibit 2.1).

C.   Evidence of Falsity

In the Boston meeting, in response to direct questions about his purchases of the castor beans and his motivations for obtaining them, Saaem made the statements detailed above. He did

not say that his true motivation was to obtain poisons based on *Breaking Bad*. He knew it was false when he told law enforcement that his interest in the castor beans was purely aesthetic. He knew that in addition to castor beans, he bought lily of the valley plants, just like the character in *Breaking Bad*. Although he was asked about poisons, he did not explain that before buying the lily of the valley plants in June 2015 (on the same day he bought the castor beans), he visited a website that sold lily of the valley extract, *i.e.*, convallatoxin itself, which cannot be planted, and he tried to buy lily of the valley *berries* (which, as noted above, the *Breaking Bad* character used to poison a child). *See* Web History, June 24, 2015 (Exhibit 3) and Wayback Machine for Starwest Botanicals, March 24, 2015 (Exhibit 3.1). Saaem also did not disclose that after the FBI approached him, he researched other deadly poisons that could be made at home. *See* Web History, July 2 and 23, 2015 (redacted) (Exhibit 4).

Saaem lied to the government brazenly. The webpage that sold the castor beans that Saeem bought directly contradicted Saaem's statements to the government about his knowledge of the castor bean plant and his reasons for purchasing it. *See* Wayback Machine for Whatcom Seed Company, May 7, 2015, "Castor Bean (Ricinus" (Exhibit 5). Specifically, the webpage showed dark purple, star-shaped leaves; explicitly identified the beans as poisonous in no fewer than three places; and stated that the plant for sale was only perennial, *i.e.*, cold tolerant/hardy, in growth zones 9-10. *Id*. Massachusetts is growth zone 6. *See* Wayback Machine for Whatcom Seed Company, April 29, 2015 (providing links to growth zone maps) (Exhibit 6) and USDA Growth Zone Map for Zip Code 02138 (Exhibit 7).

It is unclear if Saaem grew the castor bean plant. In July 2019, he said that the plant died, which necessarily means that he planted the beans and tried to grow a plant. In January 2020, he said he discarded the beans as soon as he received them.

The government has no evidence that Saaem actually produced ricin.

## II.     SENTENCING GUIDELINES

The statutory index of the United States Sentencing Guidelines (USSG) refers violations of 18 U.S.C. § 1512(c) to USSG 2J1.2, which has a base level of 14. The cross-reference at USSG 2J1.2(c)(1), however, refers to USSG 2X3.1 if the obstruction at issue involved investigation or prosecution of a crime and if the resulting offense level is higher. USSG § 2X3.1(a)(1) sets the base offense level as 6 levels lower than the underlying offense.

The parties agreed that the underlying offense as to which Saaem obstructed the grand jury was a violation of 18 U.S.C. § 175(b), knowing possession of a biological agent or toxin in a quantity that is not reasonably justified by prophylactic, protective, bona fide research, or other peaceful purpose.

USSG 2M6.1 applies to this crime. As laid out in the Plea Agreement, the parties agreed that Saaem's Sentencing Guidelines are calculated as follows:

|  | LEVEL | USSG SECTION |
|---|---|---|
| **Base Offense Level** | 20 | 2M6.1(a)(4); 1B1.3(a)(3) and Application Note 7 |
| **Select Biological Agent** | +2 | 2M6.1(b)(1) and Application Note 1, Definitions |
| **Adjustment for Obstruction** | -6 | 2X3.1(a)(1) |
| **Acceptance of Responsibility** | -3 | 3E1.1 |
| **Total Offense Level** | **13** | |
| **Guideline Sentencing Range** | **12 to 18 months** | |

## III.    SENTENCING RECOMMENDATION

The government asks the Court to sentence Saaem to incarceration at the low end of the guidelines as calculated above and to supervised release of 36 months and to impose a fine at the low end of the guidelines. Such a sentence is consistent with the Section 3553 factors.

A.     Nature, Circumstances, and Seriousness of the Offenses

Saaem successfully obstructed a grand jury investigation into his efforts to obtain ricin in 2015. That underlying crime is indisputably serious and frightening. Although the government cannot identify any specific intended victim and is aware of no specific threat made by Saaem to use ricin or convallatoxin against a person, his conduct was nevertheless threatening.

Saaem has admitted that he was inspired to obtain castor beans and lily of the valley plants by a fictional representation of the development and use of poisons to kill people.

His chosen poison, ricin, is among the most deadly and easily manufactured toxins, which is well-known as biological weapon. Nor was Saaem's interest in poison limited to ricin and convallatoxin. After the FBI approached him, and Saaem realized that his pursuit of ricin was not secret, he immediately began researching other poisons that he could make at home. Among his research topics was "tasteless" poisons, which suggests an interest in poisons that cannot be detected by a victim.

Whatever his aim in developing ricin in 2015, Saaem apparently pivoted away from it in the fall of 2015 and began harming his employer by embezzling funds. Notably, Saaem did not spend most of the money he stole. Stealing itself appears to have been the point.

Saaem's true purposes in 2015 and 2016 may never be known, yet it is clear that he had something to hide. He lied to the FBI about readily checkable facts. To be sure, he later recanted his false statements about the embezzlement, but he persisted in lying about the castor beans and did so even when he had a proffer agreement and was accompanied by and prepared for the proffer by counsel, who must have warned Saaem not to lie in a proffer.

The context for his obstruction, as well as the nature of the underlying criminal conduct, thus highlights the seriousness of Saaem's efforts to thwart the grand jury's investigation.

B.  <u>Need to Promote Respect for the Law and Just Punishment and to Afford Adequate Specific and General Deterrence</u>

Saaem's offense, although non-violent, requires meaningful punishment. Failure to impose meaningful punishment would send the message that obstruction pays off. Obstruction is a calculated crime. As the Eleventh Circuit has opined, such crimes, are "more rational, cool, and calculated than sudden crimes of passion or opportunity" and therefore are "prime candidate[s] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, *White-Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)). The Eleventh Circuit noted that when adopting the Section 3553 sentencing factors, Congress stressed the important of deterring white collar crime:

> The placing on probation of [a white collar criminal] may be perfectly appropriate in cases in which, under all the circumstances, only the rehabilitative needs of the offender are pertinent; such a sentence may be grossly inappropriate, however, in cases in which the circumstances mandate the sentence's carrying substantial deterrent or punitive impact.

*Id.* at 1240-41 (quoting S. Rep. No. 98-225, at 91-92 (1983)); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (noting the importance of "minimiz[ing] discrepancies between white- and blue-collar offenses").

C.  <u>Need to Avoid Unwarranted Sentence Disparities Among Defendants</u>

It is difficult to compare the proposed sentence for obstruction to other cases because obstruction sentences, consistent with the guidelines, reflect the seriousness of the underlying crime, the investigation or prosecution of which a defendant sought to thwart. *See, e.g.*, *United States v. Arias*, 253 F.3d 453, 455 (9th Cir. 2001) ("The idea is for the penalty for obstruction to reflect the seriousness of the underlying crime being prosecuted."). The government has not identified an obstruction case involving a violation of 18 U.S.C. § 175(b); however, it has

identified convictions and sentences for violations of 18 U.S.C. § 175(b) involving possession of ricin, but not other aggravating conduct (*e.g.*, possession of firearms or of a destructive device).[8]

In *United States v. Alberg*, No. 4-cr-371 (W.D. Wash. 2004), the defendant pleaded guilty to possessing ricin in violation of 18 U.S.C. § 175(b) and was sentenced to five years of probation and no fine.

In *United States v. Ekberg*, No. 5-cr-9 (M.D. Fla. 2005), the defendant pleaded guilty to possessing ricin in violation of 18 U.S.C. § 175(b) and was sentenced the defendant to 26 months of imprisonment and two years of supervised release.

In *United States v. Levendris*, No. 11-cr-00052-JZ (N.D. Ohio 2011), the defendant was charged with possessing ricin, in violation of 18 U.S.C. § 175(b) and then lying to agents about the possession, in violation of 18 U.S.C. § 1001(a)(2). The Court sentenced the defendant to 72 months for the ricin-based charge and 60 months for the false statements.

In *United States v. Smith*, No. 14-cr-239 (E.D. Wis. 2016), the parties calculated the sentencing guidelines exactly as the parties have here (before the reduction under USSG § 2X3.1), and the court sentenced the defendant to 40 months of imprisonment and 10 years of supervised release.

The foregoing cases offer a rough guide only because they do not involve convictions under 18 U.S.C. § 1512. However, they demonstrate the seriousness of the underlying crime and show that the government's recommendation would not create an unwarranted disparity in sentencing.

---

[8] The comparison of cases is difficult given the peculiar circumstances of each case and defendant and the different charging decisions for similar conduct. For example, in *United States v. Milzman*, No. 14-cr-186-KBJ (D.D.C. 2014), a case in which the defendant was inspired by *Breaking Bad* to make ricin, the defendant pleaded guilty to a slightly different crime, possession of a toxin by an unregistered person, in violation of 18 U.S.C. § 175b(c)(1), but which has the same applicable guideline, USSG § 2M6.1(a)(3) (base offense level 22). The Court approved a "C" plea and sentenced the defendant to 12 months of incarceration and 36 months of supervised release.

## IV.   CONCLUSION

For the foregoing reasons, the government asks the Court to sentence the defendant to 12 months of incarceration and 36 months of supervised release and to impose a fine at the low end of the guidelines.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   /s/Kriss Basil
Kriss Basil
Assistant United States Attorney
617/748-3387

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/Kriss Basil
Kriss Basil
Assistant United States Attorney